UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL DEJOSEPH<br><br>Plaintiff,<br><br>v.<br><br>CONTINENTIAL AIRLINES, INC., et al.,<br><br>Defendants. | Civ. No. 2:13-7714<br>(KM)(MAH)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the court on the Report and Recommendation of Hon. Michael A. Hammer, United States Magistrate Judge, recommending that the Plaintiff's motion to remand this action to State court (Docket No. 5) be denied. For good cause that came to light *after* the entry of the Magistrate Judge's well-reasoned Report and Recommendation, and for the reasons set forth below, the motion for remand will be **GRANTED**.

I.   BACKGROUND

Plaintiff DeJoseph is a resident of Cedar Grove in Essex County, New Jersey. Compl. (Docket No. 1) at 1. Defendant Continental Airlines, Inc., is now known as United Airlines, Inc., and United, too is a Defendant. United is incorporated in Delaware and has its principal place of business in the State of Illinois. Notice of Removal (Docket No. 1) at 2-3. Also named as defendants are John Does 1 through 10.

Plaintiff DeJoseph brings this case against Defendants based on personal injuries he allegedly suffered while on an airplane owned or operated by Continental (now United). Compl. at 2-4. DeJoseph alleges that while he was on the airplane, a "food/soup/product/hot liquid" served by United's employees spilled in his lap and he was injured. Compl. at 2-3.[1] DeJoseph

---

[1] The paragraph numbering in the Complaint re-starts for each Count. For clarity, I cite herein to the numbered page of the Complaint instead of the customarily used paragraph number.

1

alleges that United acted negligently, carelessly, and recklessly and that he suffered "severe and disabling injuries" that have resulted in past and ongoing medical treatment, absences from work, pain, and interruptions from his normal pursuits or daily activities. Compl. at 4-11 (Counts 1-4). In the fifth Count of the Complaint, DeJoseph alleges that United acted willfully and that he suffered "serious and permanent injuries" and/or fractures, disfigurement, dismemberment, and permanent loss or limitation of the use of an organ or bodily system. *Id.* at 14. In the sixth and final Count, DeJoseph further alleges that Defendants are strictly liable. In addition to the previously listed injuries, his alleged injuries in Count 6 include non-permanent injury or impairment "which prevents the performance of substantially all of his daily activities for at least 90 of the first 180 days after the accident." *Id.* at 16.

DeJoseph's Complaint requests compensatory damages, interest, costs, and any other relief the Court finds appropriate for Counts 1-4. *Id.* at 5-11. For Count 5, DeJoseph also requests punitive damages and attorneys fees. *Id.* at 12, 14. In accordance with the Rules of the New Jersey state court where the Complaint was filed, it states no specific monetary amount of damages.

DeJoseph filed his Complaint on October 18, 2013 in Superior Court in Essex County, New Jersey. Compl. at 1. United was served with the Complaint on December 4, 2013. Notice of Removal at 2. Defendants removed the action to this Court on December 20, 2013. (Docket No. 1). DeJoseph then moved to remand the action to state court, asserting that this federal court did not have subject matter jurisdiction over the action. (Docket No. 5).

Magistrate Judge Hammer issued a Report and Recommendation ("R&R"), recommending that the Court deny the motion to remand, because the prerequisites of diversity jurisdiction appeared from the face of the Complaint. *See* 28 U.S.C. § 1332. (Docket No. 9). He reasoned, soundly, that the diverse citizenship of the parties was not disputed and the amount of damages demanded, though not stated, could easily be inferred to exceed $75,000. Magistrate Judge Hammer did not need to carry his analysis any farther to establish that federal court jurisdiction was appropriate.

DeJoseph objected to the R&R, and in doing so, stipulated that he does not seek damages exceeding $75,000. Pl. Obj. (Docket No. 10) at 3. As a result, the amount in controversy does not exceed the threshold for diversity jurisdiction.

Defendants argue in the alternative, as they did before Magistrate Judge Hammer, that there is nevertheless federal question jurisdiction pursuant to 28 U.S.C. § 1331. Def. Obj. Opp. (Docket No. 11) at 2-3. Magistrate Judge Hammer quite properly did not reach that issue. But now, based on the Plaintiff's belated diversity-destroying concession, I must decide the federal-question jurisdictional issue. For the reasons set forth below, I find that the Court does not have subject matter jurisdiction, and remand the case to state court.

## II. DISCUSSION

Pursuant to the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be removed by the defendants to the appropriate district court where the action is pending. 28 U.S.C. §1441(a). Removal is not appropriate if the case does not fall within the district court's original federal question jurisdiction and the parties are not diverse. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 8 (1983)). The party that asserts jurisdiction bears the burden of showing at all stages of the litigation that subject matter jurisdiction is proper in the federal court. *Samuel–Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) (citing *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993).

The Third Circuit has cautioned that 28 U.S.C. § 1441 must be strictly construed against removal. *Samuel–Bassett*, 357 F.3d at 396, 403 (citing *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)). To that end, all doubts should be resolved in favor of remand. *Id.*; *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985) (internal citations omitted); *Steel Valley Authority v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987). Accordingly, "[w]e presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *Philadelphia Fed'n of Teachers, Am. Fed'n of Teachers, Local 3, ALF-CIO v. Ridge*, 150 F.3d 319, 323 (quoting *Renne v. Geary*, 501 U.S. 312, 316, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991)).

Plaintiff DeJoseph asserts that this Court does not have subject matter jurisdiction over this lawsuit, and moves to remand the case to state court. (Docket No. 5). I referred DeJoseph's motion for remand to Magistrate Judge Hammer for a Report and Recommendation. In their motion papers, the Defendants asserted two bases for subject matter jurisdiction: (1) federal

3

question jurisdiction under 28 U.S.C. § 1331, *via* complete preemption of state-law-based claims; and (2) diversity jurisdiction pursuant to 28 U.S.C. § 1332. Def. Remand Opp. (Docket No. 7) at 3, 16. Based on the record before him, Judge Hammer concluded that there was diversity jurisdiction pursuant to 28 U.S.C. § 1332, and recommended denying the motion for remand on that basis. R&R (Docket No. 9) at 7. Having found diversity jurisdiction, Judge Hammer did not address Defendants' additional assertion of federal question jurisdiction. *Id.* at 7-8.

A party may object to a Magistrate Judge's report and recommendation within 14 days of being served with a copy of the recommended disposition. L. Civ. R. 72.1(c)(2); Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). The district court "shall make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." L. Civ. R. 72.1(c)(2); 28 U.S.C. § 636(b)(1). *See, e.g., Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (Section 636(b)(1) requires district courts to review *de novo* those portions of the report or specific findings to which objection is made, unless the objection is not timely or specific); *United States v. Lightman*, 988 F. Supp. 448, 457 (D.N.J. 1997). The district court may consider the record developed before the Magistrate Judge, but may also receive further evidence. Fed. R. Civ. P. 72(b)(3); L. Civ. R. 72.1(c)(2).

### A. Diversity Jurisdiction

DeJoseph objected to Judge Hammer's finding of diversity jurisdiction, which was the sole basis of Judge Hammer's recommendation to deny the motion to remand. Pl. Obj. at 1; R&R at 7. Therefore, my review regarding this issue is *de novo*. *Brown*, 649 F.3d at 195.

Since the filing of the R&R, additional information has come to light regarding diversity jurisdiction of this lawsuit. The Complaint is ambiguous on its face as to the amount of damages being sought, stating only that Plaintiff seeks compensatory and punitive damages as well as attorneys fees. Compl. at 5-12, 14. In addition, DeJoseph's brief and reply brief submitted to the Magistrate Judge did not clarify whether the amount-in-controversy requirement was met. *See* Pl. Remand Br. (Docket No. 5); Pl. Remand Reply (Docket No. 8). In his R&R, Judge Hammer noted the punitive damage claim, which under New Jersey law can total up to five times the compensatory damages, as well as the demand for attorneys' fees. R&R at 7. On these bases,

Judge Hammer reasonably concluded that the amount in controversy requirement was met.

In his objection, DeJoseph now disclaims any demand for damages above the threshold amount of $75,000.[2] Pl. Obj. (Docket No. 10) at 3; *see also* 28 U.S.C. § 1332. This representation by DeJoseph is new evidence which the Court may accept as part of the record for the purposes of the motion to remand. *See* Fed. R. Civ. P. 72(b)(3); L. Civ. R. 72.1(c)(2). I will consider DeJoseph's representation as a clarification of the ambiguity in the Complaint. *See Angus v. Shiley*, 989 F.2d 142, 145 n. 3 (3d Cir. 1993) (where Complaint is ambiguous a Court might consider a subsequent stipulation as clarifying rather than amending an original pleading). As plaintiff, of course, he is the master of his complaint; he may limit the amount of money for which he sues. DeJoseph's representation will be treated as binding.

This evidence was not part of the record considered by Magistrate Judge Hammer, and thus was not considered as part of his R&R. But having accepted DeJoseph's stipulation, I must conclude that the required amount in controversy is not present, and that there is no basis for diversity jurisdiction in this case.

### B. Federal Question Jurisdiction

The remaining potential basis for the Court's subject matter jurisdiction is federal question jurisdiction. *See* 28 U.S.C. § 1331. The R&R did not reach the question of federal question jurisdiction. The parties, however, briefed the issue in their remand motion papers and objections to the R&R.

Under the well-pleaded complaint rule, a cause of action "arises under" federal law, and removal is proper, only if there is a federal question presented on the face of the plaintiff's properly pleaded complaint. *Dukes v. U.S. Healthcare*, 57 F.3d 350, 353 (3d Cir. 1995) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). DeJoseph's Complaint facially asserts only state law causes of action against the Defendants. Ordinarily, that would present an easy case for remand. Defendants assert, however, that DeJoseph's state law claims are not

---

[2]    DeJoseph's Brief represents that he "has yet to request damages anywhere near $75,000 and is willing to stipulate that damages will not exceed that amount. Pl. Obj. at 3. DeJoseph explained that his pre-litigation demand was for $6,000, and his settlement demand was also below the $75,000 threshold. *Id.* at 2.

what they appear to be. Rather, say Defendants, these claims are completely preempted by the 1999 Multilateral Convention for the Unification of Certain Rules for International Carriage by Air, S. Treaty Doc No. 106-45, 1999 WL 33292734 (May 28 1999) (the "Montreal Convention"). They must therefore be understood as "arising under" a treaty of the United States for purposes of federal question jurisdiction. Remand Opp. (Docket No. 7) at 4.

The complete preemption doctrine is an exception to the well-pleaded complaint rule: "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 95 L.Ed.2d. 55 (1987); *Dukes*, 57 F.3d at 354 (citing same); *see generally Goepel v. National Postal Mail Handlers Union*, 36 F.3d 306, 309-13 (3d Cir. 1994) (discussing the Court's complete-preemption jurisprudence). The complete preemption doctrine applies when

> the pre-emptive force of [the federal statutory provision] is so powerful as to displace entirely any state cause of action [addressed by the federal statute]. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [the federal provision].

*Dukes*, 57 F.3d at 354 (quoting *Franchise Tax Bd.*, 463 U.S. at 23, 103 S.Ct. at 2853-54). When the federal law completely preempts a state law cause of action, a claim within the scope of that federal law is federal in nature, even if it is pleaded in terms of state law, and it is therefore removable under 28 U.S.C. § 1441. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

Here, Defendants assert that, because DeJoseph's claims arise from "the course of an international flight," they are subject to the Montreal Convention, which provides the exclusive cause of action and remedy for his claims. Remand Opp. at 5. Defendants argue that this action thus arises under the Constitution, laws, or treaties of the United States, and jurisdiction is proper under 28 U.S.C. § 1331. *Id.* at 5-6.

I do not find, however, that complete preemption under the Montreal Convention is a proper basis for removal jurisdiction in this case. Neither the Supreme Court nor the Third Circuit has addressed whether the Montreal Convention completely preempts state law. It can be said, however, that complete preemption is far from universally recognized in the case law. There

6

has been significant disagreement among federal courts on the topic, including differing interpretations of Supreme Court precedent, and significant additional doubts arise from the Montreal Convention's revision of its predecessor agreement, the Warsaw Convention.[3] *See* Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 187 L.N.T.S. 11 (1934) (hereinafter "Warsaw Convention").[4] I make no attempt at a global resolution of preemption issues under the Montreal Convention. I do find, however, that complete preemption of plaintiff's causes of action is doubtful here, that preemption is better viewed as an affirmative defense, that removal to federal court is not appropriate, and that a remand should therefore be granted.

### 1. Treaty History

The Montreal Convention was designed as a replacement for the Warsaw Convention. It governs international carrier liability for flights between the United States and foreign states that are parties to the Convention, and for international flights having both their origin and destination in the United States. 1999 WL 33292734 at *6-7. Article 29 of the Montreal Convention is the focus of the preemption inquiry here. That provision bears considerable resemblance to Article 24 of the Warsaw Convention (as amended), and some courts have held that the Montreal provision should be interpreted in accordance with earlier cases analyzing the Warsaw version. *See infra* pp. 9-10.

---

[3] Regarding the Montreal Convention: *Compare Narkiewicz–Laine v. Scandinavian Airlines Sys.*, 587 F.Supp.2d 888 (N.D. Ill. 2008) (holding that the Montreal Convention does not completely preempt state law claims) *and Serrano v. Am. Airlines, Inc.*, 2008 WL 2117239 (C.D. Cal. May 15, 2008) (same) *with Jones v. USA 3000 Airlines*, 2009 WL 330596 (E.D. Mo. Feb. 9, 2009) (holding that the Montreal Convention completely preempts state law claims and allows removal); *Schaefer-Condulmari v. U.S. Airways Grp.*, Inc., Civ. No. 09-1146, 2009 WL 4729882 (E.D. Pa. Dec. 8, 2009) (same); *Knowlton v. Am. Airlines, Inc.*, 2007 WL 273794 (D. Md. Jan.31, 2007) (same).

Regarding predecessor Warsaw Convention: *Compare Husmann v. Trans World Airlines, Inc.*, 169 F.3d 1151 (8th Cir.1999) (holding that the Warsaw Convention completely preempts state law claims), *Schoeffler–Miller v. N.W. Airlines, Inc.*, 2008 WL 4936737 (C.D. Ill. 2008) (same); *and Singh v. N. Am. Airlines*, 426 F.Supp.2d 38 (E.D.N.Y.2006) (same) *with Nipponkos Ins. Co. v. GlobeGround Servs., Inc.*, 2006 WL 2861126 (N.D. Ill. Sept.28, 2006) (holding that the Warsaw Convention does not completely preempt state law claims) (collecting cases).

[4] Reprinted in note following 49 U.S.C. § 40105.

But despite the implications of this blended jurisprudence, the text of the provision has been revised over time.

Under the Warsaw Convention, the provision contained two subparts. Article 24(1) stated that cases covered by the provisions of the Convention dealing with injuries to baggage or goods, "however founded," could be brought only "subject to the conditions and limits set out in [the] Convention."[5] Warsaw Convention, Art. 24. Subsection 24(2) applied these same limits to covered personal injury actions. *Id.*

Then, in 1998, Montreal Protocol No. 4 was ratified. That Protocol amended subsection Article 24(1) to read in relevant part: "In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention." Subsection 24(2), which applied to cargo, contained additional language regarding the type of action covered: "In the carriage of cargo, any action for damages, however founded, *whether under this Convention, or in contract or in tort or otherwise. . .*" See *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 174 n. 15 (1999) (discussing amendment; emphasis added).[6]

---

[5] Article 24 incorporates other provisions in the Warsaw Convention. Chapter III of the Warsaw Convention defined the three types of liability for which the Convention provided: Article 17 established liability for personal injury to passengers; Article 18 established liability for damage to checked baggage or goods; Article 19 established liability caused by delay. *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 162 (1999). As originally written, Article 24 stated in relevant Part:

> (1) In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.
>
> (2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.

Warsaw Convention Art. 24.

[6] Stated more completely, the Montreal Protocol No. 4 amended the provision to read:

> (1) In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention, without prejudice to the question as to

8

The Montreal Convention, adopted in 1999, then collapsed the two subsections established by the Montreal Protocol No. 4. Now, the qualifier "whether under this Convention or in contract or in tort or otherwise" applies to the entire provision. *See* Montreal Convention Art. 29. In its present form applicable to this case, then, Article 29 of the Montreal Convention provides:

> In the carriage of passengers, baggage and cargo, *any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise,* can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights. In any such action, punitive, exemplary or any other non-compensatory damages shall not be recoverable.

Montreal Convention, Article 29 (emphasis added).

### 2. Article 29's Preemptive Effect

Much of the jurisprudence interpreting Article 29's preemptive effect is derived from earlier interpretations of Article 24 of the Warsaw Convention, even though, as discussed above, the text of the provision has changed. The Supreme Court considered the preemptive effect of the Warsaw Convention in *El Al Israel Airlines, Ltd. v. Tseng*, which held that a plaintiff could not recover under local law "when her claim does not satisfy the conditions for liability under the Convention." 525 U.S. 155, 176, 119 S. Ct. 662, 142 L.Ed.2d 576 (1999). Under *Tseng*, a plaintiff who cannot satisfy the conditions of liability under the Warsaw Convention is precluded from bringing the claim under state law to avoid the Convention's liability limits. *See id.* at 172, 175.

---

who are the persons who have the right to bring suit and what are their respective rights.

(2) In the carriage of cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and limits of liability set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights. Such limits of liability constitute maximum limits and may not be exceeded whatever the circumstances which gave rise to the liability."

*Id.* at 174 n. 15 (citing S. Exec. Rep. No. 105-20, at 29).

9

*Tseng* has inspired varying interpretations of the Warsaw Convention's preemptive reach. Some courts have interpreted the Court's holding to announce a rule of complete preemption, meaning that *all* state law claims within the scope of the Convention are completely preempted. *See e.g. Husmann v. Trans World Airlines, Inc.*, 169 F.3d 1151, 1153 (8th Cir. 1999) (denying remand of state tort claims for personal injuries); *Singh v. N. Am. Airlines*, 426 F.Supp.2d 38, 45 (E.D.N.Y. 2006) (state tort claims for personal injuries); *Donkor v. British Airways, Corp.*, 62 F.Supp.2d 963, 967 (E.D.N.Y. 1999) (state tort and breach of contract claims for damages due to detention after a long delay); *Waters v. Port Authority of New York and New Jersey*, 158 F. Supp. 2d 415, 421-22 (D.N.J. 2001). Under this view, there is virtually no such thing as a state-law claim; a complaint that purports to assert one must nevertheless be viewed as a federal-law complaint from the outset.

Other courts have more narrowly read *Tseng* as finding *conflict* preemption under the Warsaw Convention but not *complete* preemption. *See e.g. Sompo Japan Ins. Co. v. Nippon Cargo Airlines, Ltd.*, 522 F.3d 776, 785 (7th Cir. 2008); *Rogers v. Am. Airlines, Inc.*, 192 F. Supp.2d 661, 667 (N.D. Tex. 2001) (explaining that federalism concerns mandate strict construction of removal statute and deference to well-pleaded complaint rule). Under this view, there is room for a state-law cause of action, even if such a cause of action might be subject to certain treaty-based limitations. To invoke preemption, the defendant must identify some specific conflict between a treaty provision and the state-law cause of action asserted. Preemption would be viewed, in this context, as a defense, not as a complete displacement of state law for all purposes.

I am persuaded by the latter reading of *Tseng*, particularly in light of this Circuit's pronouncement that removal jurisdiction be narrowly construed and that all doubts be resolved in favor of remand. *Samuel-Bassett*, 357 F.3d at 396, 403. The Supreme Court did *not* expressly find complete preemption under the Warsaw Convention. Compare other contexts, in which the Supreme Court has clearly stated its intention to find complete preemption, relying on clear congressional intent to allow removal to federal court. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (complete preemption under Section 502(a) of ERISA); *Avco Corp. v. Machinists*, 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (complete preemption under § 301 of the Labor Management Relations Act, 1974). A similarly unambiguous finding of complete preemption is missing from *Tseng*. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (noting that

10

"federal preemption is ordinarily a defense"). Extrapolation of a complete preemption doctrine from *Tseng's* holding would not comport with a narrow construction of 28 U.S.C. § 1441. *See Rogers*, 192 F.Supp.2d at 668-69.

This interpretation is only strengthened by the subsequent adoption of the Montreal Protocol No. 4 and the Montreal Convention. While one can theorize as to the intent informing the retooled Article 29 (formerly Article 24),[7] the plain meaning of the resulting text militates against finding complete preemption. The provision's language "whether under this Convention or in contract or in tort or otherwise" expressly contemplates the application of the Convention's limits to all types of cases within its scope—whether directly brought under the Convention or under state/local tort or contract law. *See* Montreal Convention, Art. 29; *see also Narkiewicz-Laine v. Scandinavian Airlines Sys.*, 587 F.Supp.2d 888, 890 (N.D. Ill. 2008). By its very language, it at least admits the possibility of a cause of action brought "in contract or in tort," and suggests the application of the Convention's limits to such a claim. The text of Article 29 thus suggests that the Montreal Convention does not completely preempt all state law claims at their inception, but instead operates as an affirmative defense. *See Sompo*, 522 F.3d at 785.

As noted above, some courts finding complete preemption after the Montreal Convention was adopted continued to cite and discuss old Warsaw Convention cases. *See Knowlton v. Am. Airlines, Inc.*, at * 4-5 (D. Md. Jan 31, 2007) (discussing split in authority regarding Warsaw Convention and finding complete preemption under Montreal Convention); *Phifer v. Icelandair*, 652 F.3d 1222, 1224 n. 1 (9th Cir. 2011); *Baah v. Virgin Atl. Airways Ltd.*, 473 F.Supp.2d 591, 595–96 (S.D.N.Y. 2007) (citing legislative and executive statements showing intent to preserve Warsaw Convention precedent); *Narayanan v. British Airways*, Civ. No. 11-55870, --F.3d--, 2014 WL 1057304

---

[7] It is well established that the purposes of the Montreal Convention do not exactly mirror those behind the Warsaw Convention, if only because air travel and airline liability have substantially changed over time. *See Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n. 4 (2d Cir. 2004) (discussing differences); *Sompo*, 522 F.3d at 780. The primary aim of the Warsaw Convention was to limit the liability of air carriers to foster growth of the (then nascent) aviation industry. *Id.* In contrast, the Montreal Convention was a culmination of efforts by the United States and other countries to provide increased protection for international travelers and shippers. *Id.* Hence, the Montreal Convention has been described as favoring passengers rather than airlines. *See, e.g.*, Thomas J. Whalen, *The New Warsaw Convention: The Montreal Convention*, 25 Air & Space L. 12, 14 (2000); J.C. Batra, *Modernization Of The Warsaw System— Montreal 1999*, 65 J. Air. L. & Com. 429, 443 (2000).

at *2 n. 2 (9th Cir. Mar. 19, 2014).[8] That, I think, is a methodological oversimplification that might lead a court into substantive error. There are textual differences between Article 24 in the Warsaw Convention and Article 29 of the Montreal Convention. *See Narayanan*, 2014 WL 1057304 at *2 n. 2; *but see Schaefer-Condulmari v. U.S. Airways Group, Inc.*, 2009 WL 4729882 at *8-9 (E.D. Pa. Dec. 8, 2009) (citing relevant language in Article 29 but looking to explanatory note in Convention to find complete preemption). True, judicial precedents developed under the Warsaw Convention were expected to obviate re-litigation of settled issues. But such precedents must be reanalyzed where the language of the Montreal Convention differs from that of its predecessor, the Warsaw Convention. *See* S. Exec. Rep. 108–8, at 3 (2003); 149 Cong. Rec. S10870 (daily ed. July 31, 2003) (statement of Sen. Biden) ( "The negotiators intended [ ], *to the extent applicable*, to preserve these precedents.") (emphasis added).

In sum, complete preemption under the Montreal Convention continues to be disputed and neither the Supreme Court nor the Third Circuit has settled the issue. I have considered, however, (1) *Tseng*'s failure to expressly mandate complete preemption; (2) the plain text of Article 29, particularly as it differs from that of its predecessor; and (3) the Third Circuit's caution to narrowly construe the removal statute. Based on those considerations, I find that Article 29 of the Montreal Convention does not completely preempt all state and local causes of action to allow removal under 28 U.S.C. § 1441. Its preemptive effect is not so clear, strong, and categorical as to obviate state law from the get-go, and require a court to conclude that a state-law complaint is really a federal-law one. Federal question jurisdiction under 28 U.S.C. § 1331 is nowhere near a certainty, and Defendants' removal of DeJoseph's Complaint is not appropriate.

That is not to say that the Montreal Convention is without preemptive effect—the conditions and limits in the Convention clearly govern all actions within its scope. *See Sompo*, 522 F.3d at 781. But these are matters for defense

---

[8] Cases *not* finding complete preemption under the Montreal Convention also have relied on Warsaw jurisprudence. *See e.g. Chubb Ins. Co. of Europe S.A. v. Menlo Worldwide Forwarding, Inc.*, 634 F.3d 1023, 1026-27 (C.D. Cal. 2011); *Poliniusky v. Deutsche Lufthansa, AG*, 2012 WL 1080415 at *4 (N.D. Ill. Mar. 30, 2012); *Salamey v. Am. Airlines, Inc.*, 2011 WL 5445129 at *2 (M.D. Fla. Nov. 9, 2011). I find these cases less troubling, however, because the text of Article 29 in the Montreal Convention only reemphasizes the rationale against finding complete preemption.

in the plaintiff's chosen state-court forum, not for preemption of the plaintiff's causes of action at the outset of the case.

### III. CONCLUSION

The Defendants have failed to meet their burden of showing that the Court has subject matter jurisdiction of this case. Neither diversity nor federal question jurisdiction is present, and therefore removal is not proper pursuant to 28 U.S.C. § 1441. Based on matters that have arisen after the submission of the Magistrate Judge's Report and Recommendation, I will not adopt it. The Plaintiff's motion to remand (Docket No. 5) is **GRANTED**, and the case is hereby remanded to state court.

An Order will be entered in accordance with this Opinion.

Dated: May 12, 2014

_____
Hon. Kevin McNulty
United States District Judge